**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

NADINE CORDOVA,

    Plaintiff,

        v.                                  No. CIV 97-0846 BB/RLP

VAUGHN MUNICIPAL SCHOOL DISTRICT
BOARD OF EDUCATION, et al.,

    Defendants.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant Robert Castille's ("Castille") March 6, 1998 motion to dismiss the claims filed against him. (Doc. 50) Having reviewed the submissions of the parties and the relevant law, the Court finds that Castille's motion should be GRANTED in part, and DENIED in part.

## I. Facts

This action is one for money damages and injunctive relief pursuant to 42 U.S.C. § 1983, and (with respect to some Defendants) 42 U.S.C. § 1981. In addressing the motion to dismiss, this Court is required to accept as true all well-pleaded facts alleged in Plaintiff's complaint. See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1266 (10th Cir. 1989). The Court will accordingly accept the following facts as true for purposes of this opinion:

Plaintiff was a teacher with the Vaughn Municipal School District. Castille is an attorney in private practice who represents the Vaughn school district on an as-needed basis. Several school board members and the superintendent of the Vaughn schools became angry with Plaintiff because

she was using teaching materials in her classes that discussed topics such as Chicano history, Cesar Chavez and the United Farmworkers Union, the treatment of indigenous peoples in New Mexico by the Spanish settlers, and other subjects concerning the history and treatment of minority populations in the Southwest and elsewhere.  These Defendants falsely accused Plaintiff of teaching racially divisive topics.  These Defendants were also angry with Plaintiff because of her support of a student club designed to engage in community service projects and teach about the history and culture of people of Mexican-American heritage.  After consulting with Castille, Defendant Martinez sent a letter to Plaintiff falsely accusing her of teaching racial intolerance, promoting a militant attitude in the students, and promoting a biased political agenda.  This letter was written by Castille, or with substantial assistance from him.

In response to the letter, Plaintiff obtained assistance from the New Mexico chapter of the American Civil Liberties Union.  An ACLU attorney wrote a letter to the school board and other Defendants, which made Defendants even more angry.  Castille advised Martinez to keep notes on Plaintiff and Plaintiff's sister (also a teacher) for the purpose of documenting any complaints received about them, even though similar notes were not being kept on any other teacher.  Subsequently, Castille wrote a letter for Martinez's signature, accusing Plaintiff of teaching racism, using subject matter that was ethnically divisive and demeaning, using derogatory and racist stereotypes, and discussing the Vietnam War in a racially biased manner.  These accusations were totally false and were made without any Defendant, including Castille, having investigated the actual facts.  This letter was written in retaliation for Plaintiff's assertion of her First Amendment rights and for her act of obtaining assistance from the ACLU.  The letter ordered Plaintiff to change her curriculum, even

2

though the school's own procedures for addressing curriculum concerns had not been followed.

Also, the student club was disbanded during this period.

Subsequently, a reporter contacted Martinez because she wanted to write an article about the

situation in the Vaughn schools.  Martinez called Castille, who in turn called the reporter to request

that she not write the article because it would cause division and be "bad" for the Vaughn school

district.  Despite this request, the reporter came to the schools, interviewed a number of people, and

wrote an article discussing the disbanding of the club Plaintiff had sponsored, the change in Plaintiff's

curriculum to exclude teaching about Cesar Chavez and other subjects, and Plaintiff's belief that the

curriculum changes ordered by the school board had hurt her students.  Defendants, including

Castille, were extremely upset and angry with the article and the statewide criticism they received as

a result.  They blamed Plaintiff and her sister for the article, and Castille called Martinez to discuss

it.  Defendants consulted with each other about the possibility of taking disciplinary action against

Plaintiff.  In February 1997, Martinez spoke with Castille about that possibility, and Castille again told

Martinez to document matters involving Plaintiff that had occurred months before.   Martinez

immediately resumed taking notes about Plaintiff's conduct.

After speaking with Castille, Martinez and/or another Defendant scheduled a special meeting

of the school board for the purpose of formulating a plan to discipline Plaintiff.  At some point prior

to this meeting, a representative from the New Mexico Department of Education called to offer

assistance in resolving the dispute.  Castille turned down this offer.  During the special board meeting,

Castille and some other Defendants expressed their belief that Plaintiff's recent introduction of new

teaching materials, designed by the authors to promote racial understanding and harmony, would

provide an excuse to fire her under the guise of insubordination, as an act defying the prior directive

to eliminate objectionable materials from her curriculum.  These Defendants, including Castille,

devised a plan to induce Plaintiff and her sister to meet with the school board without involving any

attorneys except Castille.  A second special board meeting was held two days later, with Plaintiff and

her sister present, during which Plaintiff attempted to explain what the new teaching materials were

about.  She was not allowed to do so.  The school board decided to suspend Plaintiff for

insubordination.

The next day, Castille spoke to Martinez.  Castille advised Martinez that Plaintiff and her

sister should be fired, and Martinez agreed.  Castille then wrote letters to Plaintiff and her sister

indicating that Martinez was recommending that they be discharged.  Castille then wrote a letter that

Martinez signed, falsely alleging that Plaintiff had been insubordinate, that she had replaced the

prescribed curriculum with one that was racist (even though the materials Plaintiff used were

developed by the Southern Poverty Law Center with the specific intent of combatting or diminishing

racism), and that she had expressly been told not to use those materials (even though no one had ever

informed her of such a prohibition).  Plaintiff and her sister were both discharged.  Plaintiff

subsequently filed this lawsuit, alleging violations of her right to substantive and procedural due

process, as well as her First Amendment rights.

## II.  Legal Standard

As the Court noted previously, in addressing the motion to dismiss the Court must accept as

true all facts alleged in Plaintiff's complaint.  The Court does not, however, accept conclusory

allegations as true, although a party's intent or discriminatory animus may be alleged generally.

Phelps, 886 F.2d at 1269-70; Cayman Exploration Corp. v. United Gas Pipe Line, 873 F.2d 1357,

1359 (10th Cir. 1989).  This Court will dismiss the complaint, or claims contained in the complaint,

only if it appears that Plaintiff can prove no set of facts in support of her claim that would entitle her

to relief.  Phelps, 886 F.2d at 1266.  Castille claims dismissal is in order for a number of different

reasons, including absolute immunity, lack of sufficient allegations that he acted under color of law,

lack of sufficient allegations that he participated in a conspiracy with state officials, and lack of a

viable procedural-due-process claim.  The Court will consider Castille's arguments in light of the

above standards.

### III.  Claims

### A.  Absolute Immunity

Castille argues that Plaintiff's allegations show that he did nothing more than provide legal

counsel to a client.  He contends further that an attorney should be absolutely immune from suit, in

a § 1983 case, for actions that are completely within the bounds of the attorney-client relationship.

The Court disagrees.  Both the Supreme Court and the Tenth Circuit have given only "sparing

recognition" to attorney claims of absolute immunity.  Robinson v. Volkswagenwerk AG, 940 F.2d

1369, 1370 (10th Cir. 1991).  Absolute immunity has been accorded only to: (1) government attorneys

who are prosecutors or acting in a similar capacity, for claims of malicious prosecution or defamation,

or analogous claims; and (2) private attorneys, for defamation claims.  Id. at 1371-72.  This case is

a § 1983 case, not a  malicious-prosecution or defamation case, and absolute immunity is not

warranted under the limited scope of that doctrine outlined in Robinson.

The Court recognizes that Robinson was not a § 1983 case, and that a civil-rights action

might sometimes be the functional equivalent of a malicious-prosecution claim.[1]  However, the

_____

[1]For example, the § 1983 claim might be directed only at the fact that a government attorney
refused to dismiss certain criminal charges, or filed an allegedly groundless civil action.

discussion of absolute immunity found in <u>Robinson</u> is nonetheless applicable to this case.  As

<u>Robinson</u> points out, government attorneys have been granted absolute immunity only for activities

that are intimately associated with the judicial process, such as initiating or pursuing a criminal

prosecution or civil action.  <u>Id.</u>, 940 F.2d at p. 1371, fn. 1; pp. 1372-73, fn. 4.  Since function, not

position, is the focus, no absolute immunity is allowed for actions that are administrative,

investigative, or otherwise removed from the judicial process.  <u>See, e.g.</u>, <u>Burns v. Reed</u>, 500 U.S.

478, 493 (1990) (giving legal advice to police is not so intimately associated with the judicial phase

of the criminal process that it qualifies for absolute immunity; absolute immunity is justified only

where there is a tradition of immunity comparable to common-law immunity from malicious

prosecution); <u>Roberts v. Kling</u>, 104 F.3d 316, 320 (10th Cir. 1997) (obtaining arrest warrant is

functionally part of initiation of criminal proceeding, so district attorney's investigator entitled to

absolute immunity for such action).

Assuming (as the Court discusses below) that Castille can be considered a government

attorney for purposes of this case, he would have absolute immunity at most only for defamation

claims or for claims arising out of a decision to initiate and pursue a lawsuit on behalf of the school

board.  <u>See</u> <u>Spear v. Town of West Hartford</u>, 954 F.2d 63, 66-67 (2d Cir. 1992) (corporation counsel

for town was absolutely immune from suit for authorizing lawsuit against party).  Castille's alleged

activities in this case are far removed from any type of litigative activity.  No case had been filed at

the time he took the actions about which Plaintiff now complains.  He is alleged, in general, to have

personally participated in and encouraged the decisions to reprimand, warn, and finally terminate

Plaintiff for her actions and statements.  This is not activity "intimately associated with the judicial

process" and, under the applicable case law, Castille is not entitled to absolute immunity.  <u>See</u> <u>Burns</u>;

Robinson.  If a prosecutor does not have absolute immunity for giving legal advice to police officers, the activities Castille engaged in, which went far beyond merely giving advice, cannot protected by such immunity either.  Of course, if Castille is not considered a government attorney but merely a private attorney, his claim to absolute immunity is even less persuasive.  See Robinson (recognizing immunity from defamation suits as sole form of absolute immunity afforded private attorneys).

### B.  Color of Law

Castille argues that his actions all occurred in the course of simply giving legal advice and counsel to his government client, and that those actions therefore cannot be determined to be under color of state law.  In response, Plaintiff makes several alternative arguments: (1) Castille should be considered a local government official under the circumstances of this case; (2) Castille was a willful participant in joint action with local government officials, even if he himself was not such an official; and (3) Castille was part of a conspiracy with local government officials.  The Court agrees with Plaintiff's first argument, and in the alternative with the second.  Therefore, the Court need not address the third point.

### 1.  Castille as State Actor

If a person's conduct can be said to be state action, that conduct is also action under color of state law and will support a suit under § 1983.  West v. Atkins, 487 U.S. 42, 49 (1988).  To constitute state action, the activity must be caused or performed by some person for whom the state may fairly be held responsible.  Id.  Employment by the state is generally sufficient to render the person a state actor.  Id.  This is so whether the person is on the state payroll or acts pursuant to a contract with the state.  Id., 487 U.S. at 55-56.  It is the person's function, not the terms of the employment or title, that determines whether his actions can fairly be attributable to the state.  Id.

In this case, Castille's function was to provide legal assistance and advice to the school board on a contractual basis. As part of that function, he allegedly participated in the investigation of Plaintiff's activities, the decision to reprimand her in the first letter, and the final decision to discharge her. His participation allegedly went beyond merely providing legal advice concerning the board's proposed actions, or the most legally defensible means of achieving the board's intended result. Instead, it is alleged he told Martinez to start building a record that could support disciplinary action, attempted to prevent news of the dispute from spreading, wrote letters of discipline containing false and poorly-investigated charges, rejected efforts by the state education department to defuse the situation, and finally encouraged the board to discharge Plaintiff rather than mete out some lesser form of discipline. It is his position as retained counsel for the school board that made it possible for him to advise or encourage the board as he did, and to directly participate in the process that ended with Plaintiff's discharge. Given Castille's alleged active participation in the entire process, his actions as retained counsel are actions that can fairly be attributed to the school board, and therefore constitute state action. Cf. West; Bray by Bray v. Hobart City Sch. Corp., 818 F.Supp. 1226, 1237 (N.D.Ind. 1993) (implying that attorney could be considered agent of the state whether she was full-time or part-time employee, or a private attorney retained for a specific matter; not addressing issue because attorney could be found liable under joint-action theory even if not considered agent of state).

Castille argues that the contract physician in the West case was performing functions constitutionally required of the state, while this case does not involve the same type of situation. Although that may be true, the point of West was that it does not matter whether a person is employed by the state on a full-time, part-time, or sporadic contractual basis. While that person is

8

acting on behalf of the state, the person's activities will be considered state action to the same extent as those of any other state employee.  In this case, for example, if Castille's alleged actions had been performed by a full-time employee of the school district, there is no doubt they would be considered state action.  It makes no difference, therefore, that Castille acted pursuant to a contract with the school board.  During the times he acted on behalf of his client, he was a state actor and his activities should be considered to have been under color of state law.

Castille also argues, based on a New York federal district court case, that an attorney's act of merely giving his client professional legal advice cannot be considered action under color of state law.  Goetz v. Windsor Central School Dist., 593 F.Supp. 526, 528-29 (N.D.N.Y. 1984).  To the extent Goetz can still be considered viable after West and Burns[2], the Court finds Goetz distinguishable.  In Goetz, there was no allegation that the defendant attorney shared his client's unconstitutional goals or had any personal interest in the case.  In this case, on the other hand, as discussed above, Castille allegedly shared the desire of some members of the school board, as well as Martinez, to punish and ultimately terminate Plaintiff in retribution for her speech and other constitutionally protected activities.  Castille is also alleged to have taken concrete steps to achieve that result.  These allegations are much more analogous to those in Bray, where the court denied absolute immunity in a § 1983 action brought against an attorney who "deliberately advised" a special-education agency to proceed in an unlawful manner in denying a student's requested residential placement.  818 F.Supp. at 1237.  The treatment of the issue in Goetz is therefore not persuasive as applied to this case.

[2]West, 487 U.S. at 52 ("Defendants are not removed from the purview of § 1983 simply because they are professionals acting in accordance with professional discretion and judgment."); Burns (prosecutor has no absolute immunity for act of giving legal advice to police).

### 2.  Castille as Willful Participant in Joint Activity

The Court finds, in the alternative, that at this juncture Plaintiff has alleged sufficient facts to show that Castille was a willful participant in joint activity with Martinez and the other school-board defendants.  State action providing the requisite "color of law" is present if a private party is a willful participant in joint action with the state or its agents.  Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1453 (10th Cir. 1995).  The question with respect to this test is whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.  Id.  Plaintiff has clearly alleged facts showing that Castille, as a private party, acted in concert with Martinez and the other school board defendants to effect the claimed deprivation of constitutional rights suffered by Plaintiff.  As discussed above, Plaintiff alleged that Castille actively participated in the discussion concerning the appropriate level of discipline to impose on Plaintiff, wrote letters for Martinez' signature containing false accusations, did not limit his activities to passively providing legal advice but advocated for the discharge, counseled Martinez to single out Plaintiff and her sister for documentation of anything that could be used to support disciplinary action, and in general fully participated in the entire process, not just as a legal advisor but as an advocate and actor assisting in Defendants' allegedly unconstitutional activity.  These allegations are sufficient to support a finding that Castille willfully participated in joint activity with the other Defendants.  See Bray (attorney can be held liable under § 1983 as joint actor with state officials, where attorney's legal advice to client may have caused deprivation of plaintiff's constitutional rights).

Castille argues that Plaintiff's allegations concerning his retaliatory motives, state of mind, and any facts showing anything more than the pure provision of legal advice are rank speculation.  Accordingly, argues Castille, those allegations should be disregarded for purposes of the motion to

dismiss.  The Court cannot agree.  The Rules of Federal Civil Procedure specifically provide that malice, intent, knowledge, and other states of mind may be averred generally in a complaint.  Phelps, 886 F.2d at 1270.  For example, to allege that a defendant's actions were motivated by racial animus, it is sufficient to allege that "Defendants' said conduct was at all times wanton, reckless, malicious, willful, illegal, and in bad faith thereby to deliberately discriminate against plaintiff because he is a black man's lawyer ... all by invidious discrimination and under color of state law ... and pursuant to unlawful race-based animus ..."  Id., 886 F.2d at 1269, fn. 4.  The complaint in this case contains specific allegations of actions taken by Castille and of his alleged motivation for taking such actions.  Although these allegations may not survive further development of the facts during discovery, they are presently sufficient to state a claim against Castille as either a state actor or a private person acting jointly with state actors.

Due to the Court's resolution of the above issue, the Court will not address the issue of the sufficiency of Plaintiff's conspiracy allegations.

### C.  Procedural Due Process

Castille argues that Plaintiff has not sufficiently alleged the deprivation of a protected property interest and has therefore failed to allege a viable procedural-due-process claim.  The Court agrees.  As Plaintiff explained in her response to the motion to dismiss, the procedural-due-process claim does not concern her discharge.  Instead, it concerns Defendants' imposition of a requirement that she change her curriculum, without following the procedures mandated by the school board's own rules and regulations.  The deprivation alleged by Plaintiff as the basis of her procedural-due-process claim, therefore, appears to be the deprivation of her ability to teach the curriculum she desired.  The Court

finds that the interest claimed by Plaintiff is not a protected property or liberty right for purposes of the due-process clause.

Property interests are created and defined by state law.  Childers v. Independent School Dist. No. 1 of Bryan County, 676 F.2d 1338, 1341 (10th Cir. 1982).  The New Mexico Supreme Court has held that even suspension of a school employee, as long as it is with pay, does not invade any recognized property interest.  Board of Educ. of Carlsbad Mun. Schs. v. Harrell, 882 P.2d 511, 518 (N.M. 1994).  This holding is in accord with many federal cases that have held that personnel actions that do not result in a reduction of pay or loss of other tangible benefits do not implicate protected property interests.  See, e.g., Ferraro v. City of Long Branch, 23 F.3d 803, 806-07 (3d Cir. 1994) (change in work assignments requiring more manual labor and fewer managerial duties, without decrease in salary or title, did not implicate protected property interest); Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1141-42 (4th Cir. 1990) (transfer of professor from one department to another, without loss of rank or pay, does not implicate protected property interest); Lowe v. Kansas City, Mo. Bd. of Police Com'rs, 841 F.2d 857, 858 (8th Cir. 1988) (placing letter of reprimand in officer's file did not deprive officer of protected property interest); see also Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 782-83 (2d Cir. 1991) (not every contractual benefit rises to level of constitutionally protected property interest; denial of mutually expected promotion which would have included salary increase, however, did implicate such an interest).

Plaintiff's claim in this case is an entitlement to continue teaching the curriculum of her choice, rather than a claim that she has suffered a loss of pay or other tangible benefits of her employment.

That claimed entitlement did not rise to the level of a property interest protected by the Constitution.

The Court will therefore grant Castille's motion to dismiss Plaintiff's procedural-due-process claim.[3]

D.  42 U.S.C. § 1981 Claim

As Plaintiff points out in her response, this claim was asserted against a Defendant other than

Castille.  Castille's motion to dismiss this claim is therefore unnecessary.

**IV.  Conclusion**

Based on the foregoing, the Court will DENY Castille's motion to dismiss, except as it

concerns the procedural-due-process claim.  That claim will be dismissed as to Castille.

An Order in accordance with this Memorandum Opinion will issue.

DATED May 12, 1998.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

---

[3]The Court expresses no opinion as to the validity of Plaintiff's claimed right to continue teaching the curriculum of her choice, at least until Defendants followed proper procedures to change the curriculum.  At this point, the existence of such a right, contractual or otherwise, is not clear. See, e.g., Boring v. Buncombe County Bd. of Educ., 136 F.3d 364, 370-71 (4th Cir. 1998) ("We agree with Plato and Burke and Justice Frankfurter that the school, not the teacher, has the right to fix the curriculum.").