IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NADINE CORDOVA,

        Plaintiff,

  vs.                                                CIVIL NO. 97-846 BB/RLP

VAUGHN MUNICIPAL SCHOOL
DISTRICT BOARD OF EDUCATION,
ANDY CORDOVA, ART DUNLAP,
Individually and in their official
capacities, ROBERT D. CASTILLE,
ART MARTINEZ, Individually and in
his official capacity, ERNEST ARAGON,
Individually and in his official capacity,
and ELIAS SANCHEZ, Individually and
in his official capacity,

        Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING JOINT MOTION FOR PROTECTIVE
ORDER LIMITING EXAMINATION BY DEPOSITION
AND DENYING PLAINTIFF'S MOTION FOR
PROTECTIVE ORDER AND ORDER TO COMPEL
<u>CONCERNING INTERFERENCE WITH DEPOSITIONS</u>**

THIS MATTER having come before the Court on the Joint Motion for Protective Order Limiting Examination by Deposition **(Docket No. 90)** submitted by the defendants and the Plaintiff's Motion for Protective Order and Order to Compel Concerning Interference With Depositions **(Docket Nos. 97, 103, 105)**, the Court having read said motions, the extensive submissions submitted with said motions, the memoranda in support of and in opposition to said motions and otherwise being fully advised, finds that the Joint Motion for Protective Order Limiting Examination by Deposition shall be **granted** and the Plaintiff's Motion for Protective Order and Order to Compel

Concerning Interference With Depositions shall be **denied**.[1]

## FACTS

The plaintiff was employed as a teacher with the Vaughn School District and had a written contract for the 1996-97 school year. She had been employed with the Vaughn School District for about 12 years. During the 1996-97 school year, the plaintiff helped organize a MEChA Club for the Vaughn High School and junior high school students. MEChA is a student organization that engages in community service projects and fosters student's learning about the history and culture of the Mexican-American people. During August of 1996, a controversy arose at the school regarding the role of MEChA in the school and the support the school was to give to MEChA in terms of funding and availability of school equipment for MEChA use. In September of 1996 the school board prohibited MEChA from receiving school funds or using school equipment and prohibited the plaintiff from teaching matters that reflected MEChA philosophy. The controversy between the plaintiff and members of the school board continued throughout the fall of 1996. Various issues were raised about members of the board taking trips and requests for records pertaining to expenses for those trips as well as the board's opposition to the use of school funds for MEChA members for a trip to Washington, D.C. There were other controversies. MEChA was prohibited from using school bulletin boards in hallways or post announcements of its meetings throughout the school. This

---

[1] In response to the Defendants' Joint Motion for Protective Order Limiting Examination by Deposition, the plaintiff not only responded to the motion, but filed Plaintiff's Motion for Protective Order and Order to Compel Concerning Interference With Depositions. This procedural technique was not only unnecessary, but greatly expanded the Court record and made ruling on the motion cumbersome. The Court having read all of the deposition excerpts provided in the two motions is well aware of the positions of the parties and if the Court determined the Defendant's Motion was not well founded, the Court would have styled its order to reflect essentially what the plaintiff outlined in her motion. Although the issues were well presented in both motions, the plaintiff's approach to responding to this motion was overdone.

controversy evolved into an accusation by various defendants in January of 1997 that the plaintiff had introduced racially biased materials into her curriculum. The defendants ordered the plaintiff to stop teaching racially devisive material in her classroom and threatened her with termination if she failed to do so. The relationship between the plaintiff and defendants continued to deteriorate throughout the school year and on July 7, 1997 the school board voted to terminate the plaintiff, alleging insubordination. The plaintiff claims that she was not insubordinate and that in fact the defendants instituted a campaign of harassment against her out of racial animus and/or because of plaintiff's ancestry and her various views of her ancestry in violation of 42 U.S.C. § 1981. Plaintiff also asserts a violation of her First and Fourteenth Amendment rights.

## DISCUSSION

The defendants have requested a Court order limiting the length, mode and scope of examination by deposition based upon the plaintiff counsel's conduct in the taking of the depositions of Arthur Martinez,[2] Henry Andazola, Leopoldo Gutierrez, Jr., Marcelino Cordova and Elias Sanchez. The Court has reviewed hundreds of pages of deposition transcripts submitted by counsel for the defendants and counsel for the plaintiff. The Court agrees with the defendants that the questioning by plaintiff's counsel throughout the course of these depositions at times exceeded the proper scope of discovery. It is not possible for the Court to determine why discovery was undertaken in this fashion. However, the Court will cite to a few specific instances to make clear what is not appropriate in a deposition:

    1.    Counsel asked Arthur Martinez during his deposition of May 21, 1998 whether he was familiar with Dr. Martin Luther King's "little speech", "I have a dream. . ." There was extensive

---

[2]Mr. Martinez' statements were taken prior to the filing of this lawsuit.

questioning about this topic. *Martinez deposition at 307*. It is hard to imagine why this subject area would be relevant or could possibly ever lead to relevant, material evidence.

    2.      There was a question by plaintiff's counsel about whether the United States Congress feels that these are "dark times" that we live in given certain cut-backs in education. *Martinez deposition at 319*. Once again, this is nothing but banter that not only is irrelevant, but wastes time as well.

    3.      There was further questioning in the Martinez deposition about an article written by Mr. Rodriguez about police brutality and whether the deponent felt that a televised attack by police on Latinos was outrageous. *Martinez deposition at 342*. Once again, it is hard to imagine why this was an area of inquiry.

    4.      There were improper opinion questions asked of Henry Andozola. *Andozola deposition at 11, 12, 28 & 29*.

    5.      There were improper history questions asked of Mr. Leopoldo Gutierrez, Jr. that did nothing but waste time. *Gutierrez deposition at 20*.

    6.      Further, in Leopoldo Gutierrez, Jr.'s deposition, the question as to whether Mr. Cordova employed Mexican nationals on his ranch is also completely irrelevant. *Gutierrez deposition at 93*.

    7.      There were questions of Marcelino Cordova regarding what would be appropriate for the school attorney to do under certain circumstances. Once again, this is irrelevant, speculative and a time wasting question. *Cordova deposition at 113*.

These areas of inquiry are only a few examples of the numerous areas of improper questioning laced throughout the depositions provided to the Court. There was tremendous repetition of

questions, questions that were irrelevant and not likely to lead to relevant evidence, questions calling for improper opinion and questions that were wildly speculative by their very nature. In fact, the depositions read more like interviews on "60 Minutes", rather than discovery depositions in a serious civil lawsuit. Therefore, this is an appropriate occasion to apply the discretion found in Rule 30(d) Fed.R.Civ.P.

      The rule does not provide for a time limit on depositions, but time limits may be set by court order. In order to be successful on a motion for protective order to limit examination by deposition, the moving party must demonstrate that the examination was being conducted in bad faith or in an unreasonably annoying, embarrassing or oppressive manner. *Garland v. Torre,* 259 F.2d 545 (2nd Cir. 1958) *cert. denied, 358 U.S. 910 (1958).* The Court finds that the questioning referenced to the Court in this case was unreasonable, oppressive and above all, irrelevant and not likely to lead to relevant, admissible evidence at the time of trial. Therefore, the Court will impose the following restrictions on all future depositions set in this case:

      1.     Depositions of the parties will be limited to a maximum of 4 hours.

      2.     Depositions of non-parties will be limited to a maximum of 3 hours.

      3.     Pursuant to Fed.R.Civ.P. 30(c) counsel are to conduct themselves during the course of depositions in a manner that would be permitted as if they were at trial under the provisions of the Federal Rules Evidence. Counsel are prohibited from asking questions which are argumentative, repetitive, speculative or that mischaracterize testimony.

      4.     Pursuant to Fed.R.Civ.P. 26(b)(1), counsel are prohibited from asking questions which call for irrelevant information and information not reasonably calculated to lead to the discovery of admissible evidence.

**IT IS THEREFORE ORDERED** that the Joint Motion for Protective Order Limiting Examination by Deposition is **granted** as outlined hereinabove.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Protective Order and Order to Compel Concerning Interference With Depositions is **denied.**

**IT IS FURTHER ORDERED** that should the plaintiff wish to continue the deposition of Elias Sanchez, that said deposition shall be limited to 1 hour from start to finish. Further, the deposition is limited to the following topics only:

1. Questions relating to the April 1997 board meeting that Mr. Sanchez attended.

2. Questions relating to the June 1997 board meeting where the termination of Nadine Cordova was discussed.

3. Questions relating to the July 1997 board meeting where Nadine Cordova was terminated.

**IT IS SO ORDERED.**

_____
RICHARD L. PUGLISI
United States Magistrate Judge

Philip B. Davis, Esquire - Attorney for Plaintiff
Richard Rosenstock, Esquire - Attorney for Plaintiff
Andrew Vallejos, Esquire - Attorney for Plaintiff
Daniel Yohalem, Esquire - Attorney for Plaintiff
Jerry A. Walz, Esquire - Attorney for Defendants
Robert D. Castille, Esquire - Attorney for Defendant Robert D. Castille
John Bannerman, Esquire - Attorney for Defendant Robert D. Castille
Phil Krehbiel, Esquire - Attorney for Defendant Robert D. Castille