IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

---

NADINE CORDOVA,

    Plaintiff,

v.                                        No. CIV 97-846 BB/RLP

VAUGHN MUNICIPAL SCHOOL DISTRICT BOARD OF EDUCATION; ANDY CORDOVA, Individually and in his Official Capacity; ART DUNLAP, Individually and in his Official Capacity; ROBERT CASTILLE, Individually; ART MARTINEZ, Individually and in his Official Capacity; ERNEST ARAGON, Individually and in his Official Capacity; and ELIAS SANCHEZ, Individually and in his Official Capacity,

    Defendants

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's objections to the September 3, 1998, opinion and order of Magistrate Judge Richard L. Puglisi. Having reviewed a significant portion of the filed discovery and considered the

briefs of counsel, the Court FINDS the order of the Magistrate is not clearly erroneous or contrary to law.

## I. Facts

Plaintiff was employed as a teacher with the Vaughn School District for about 12 years. During the 1996-97 school year, Plaintiff helped organize a MEChA Club. MEChA is a student organization that engages in community service projects and fosters student's learning about the history and culture of the Mexican-American people. A controversy arose at the school regarding the role of MEChA in the school and the support provided to MEChA in terms of funding and the availability of school equipment. In September of 1996, the School Board prohibited MEChA from receiving school funds or using school equipment and prohibited the Plaintiff from teaching matters that reflected MEChA philosophy. MEChA was prohibited from using school bulletin boards in hallways or posting announcements of its meetings throughout the school. Various issues were raised about the School Board's opposition to the use of school funds for members of MEChA to take a trip to Washington, D.C.

Defendants also had other disagreements with Plaintiff over her use of teaching materials that discussed topics such as Chicano history, Cesar Chavez and the United Farmworkers Union, the treatment of indigenous peoples in New

Mexico by the Spanish settlers, and other subjects concerning the treatment of minority populations. Based on her handling of these topics, Defendants accused Plaintiff of using racially divisive methods to teach history and Plaintiff was terminated.

## II. Standard of Review

The standard for reviewing objections to a magistrate's non-dispositive discovery orders is set forth in Rule 71(a): "the district judge to whom a case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bobkoski v. Board of Educ.*, 141 F.R.D. 88, 90 (N.D. Ill. 1992) (quoting *United States v. United States Gypsum*, 333 U.S. 364, 395 (1948).

## III. Discussion

Following several heated exchanges between counsel, Defendants terminated the deposition of Elias Sanchez. Defendants requested Judge Puglisi to issue an order limiting the length, mode, and scope of examination by deposition based

upon the conduct of Plaintiff's counsel in the depositions of Arthur Martinez, Henry Andazola, Leopoldo Gutierrez, Jr., Marcelino Cordova, and Elias Sanchez. Plaintiff filed a cross motion to compel discovery.

Plaintiff challenges Judge Puglisi's rulings limiting her to only four hours for the deposition of each of the parties and three hours for the non-parties as "extreme and unreasonable discovery restrictions." Br. Supp. Pl.'s Obj. at 2. However, Plaintiff's counsel has already taken numerous depositions which, based on this Court's review, exceeded the time and relevancy limits of appropriate discovery.

On May 14, 1998, Plaintiff's counsel, Richard Rosenstock, took the deposition of Henry Andazola, the Superintendent who had replaced Defendant Martinez. Andazola was not involved with Plaintiff's termination and had no personal knowledge of the relevant circumstances. Nevertheless, Plaintiff's counsel attempted to qualify Andazola as an expert and attempted to elicit opinion testimony by asking him to speculate about the propriety of Martinez's actions, apparently on the premise this was a claim governed by the legal standard for malpractice.[1] A telephone hearing on this line of questioning was held before

---

[1] For example:

**Judge Puglisi who ruled that Andazola did not have to render these opinions, and invited Plaintiff to move to compel them if any grounds existed for these questions. No such motion was filed.**

**On May 21, 1998, Plaintiff's counsel deposed School Board member Leopoldo Gutierrez. In this deposition and others, Plaintiff's counsel repeatedly**

---

> Q. And now I come back and ask you whether you believe the directive in the second paragraph of this letter is adequate to communicate to Nadine Cordova what changes were to occur in her classroom?
> A. I really don't know. I don't think I can give an opinion on that.
> . . .
> Q. If you were dealing with a teacher who was teaching certain material that you were concerned about, would you give – how would you explain to the teacher what you wanted changed?
> A. I'd probably go through a process of discussing with the teacher, then ultimately providing some written guidelines, perhaps, depending on – on the, you know, seriousness of the matter. Might even end up consulting an attorney before rendering anything written.
> . . .
> Mr. Walz: He already testified, Richard, that he wasn't here when all this occurred. He knows nothing about it. He already said he purposely kept away from the case. He doesn't know what happened in the case. He doesn't know what procedures were or were not followed. He's already said that.
> Mr. Rosenstock: I'm saying we are entitled to ask him about the procedures that were followed and whether they were the appropriate – whether he feels they were appropriate. The issue here is whether a reasonably competent superintendent would have done what Art Martinez did. And one of the ways we're going to find that out is from other superintendents.

Andazola Dep. ¶¶ 15-20.

**attempted to argue his client's historical perspective in the form of rhetorical questions.[2]**

**The scope of discovery is limited to information which is relevant to the subject matter involved in the litigation or to information which appears**

---

[2] For example:

> Q. Well, what's your understanding of how the Spanish obtained the land?
> Mr. Walz: I object to that. This isn't a history test for this witness. And I think it's an improper question.
> Mr. Rosenstock: That was actually a very big issue here,, was that the teachers were teaching that the land wasn't just given to the Spanish. And they caught a lot of flak because they had the temerity to teach that it was stolen and people were murdered in the process.
> Q (by Mr. Rosenstock). What's your understanding of how the Spanish obtained the land here?
> Mr. Walz: Same objection.
> A. You know, to me, I really don't keep up with it, so –
> Q. Well, it happened a long time ago.
> A. Yes. But to me, it really isn't –
> Q. But what's your understanding of how the Spanish obtained the land from the American Indians when they came?
> Ms. German: I have to concur with Mr. Walz's objection. But you do have to answer if you have an opinion.
> The Witness: What's that?
> Ms. German: I said you do have to answer if you do have an opinion or an understanding of that question.
> A. They just took the land, I guess. I don't know. I guess that would be my – you know, I don't remember. I don't really, like I said, keep up with it, you know.
> Q (by Mr. Rosenstock). When you said, "took the land," you didn't mean they lawfully obtained it. They seized it, didn't they?

Gutierrez Dep. ¶¶ 20-22.

reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). While the discovery rules should be liberally applied by the courts, *Hickman v. Taylor*, 329 U.S. 495, 507 (1947), there must be "some threshold showing of relevance ... before parties are required to open wide the doors of discovery." *Id.* Information is irrelevant when it can have no possible bearing on the subject matter of the action. *Pulsecard, Inc. v. Discover Card Serv., Inc.*, 168 F.R.D. 295, 309 (D. Kan. 1996). Repeated and extensive questioning of Defendants as to their personal interpretation of historical events was irrelevant and burdensome.

In May of 1997, Plaintiff's counsel took the deposition of Arthur Martinez, the then Superintendent of Vaughn Schools. Defendant Martinez was an important deposition for Plaintiff as it was he who had sent Plaintiff a series of letters which personally warned and directed her to cease teaching the curriculum which had been disapproved by the School Board. However, Plaintiff's counsel grilled Martinez for some 17 hours (over four days of scheduled deposition) and argued at length and repeatedly with the witness.[3] Counsel also repeated specific

---

[3] For example:

Q (by Mr. Rosenstock). Yeah. You considered it very demanding, didn't you?

**questions and lines of questioning, even though he recognized the witness had already testified on these marginally relevant topics.[4]**

---

> A. I considered it with concern.
> Q. You considered it demanding, didn't you?
> A. No.
> Q. And did Patsy Cordova come and ask you about anything related to the issues raised in Exhibit 35?
> A. Patsy Cordova and I had many conversations about the administration of activities in the high school. I'm sure some of this was discussed with Patsy Cordova.
> Q. Did she come and ask you to furnish information for Nadine to look at regarding the snack balances and purchases and what not?
> A. I believe she did, and I think we did furnish that.
> Q. Did you feel that she was demanding that you furnish it? Did you view it as a demand?
> A. No. I felt that was ethical and practical. I didn't see anything offensive by it.
> Q. Did you think there was anything offensive about Nadine's letter, Exhibit 35?
> A. I didn't find – I think the word "offensive" does not fit. Just concerns.
> Q. Didn't you feel it was very demanding on her part?
> Mr. Madrid: Asked and answered multiple times. He's already said he was concerned.
> Q (by Mr. Rosenstock). Did you feel it was very demanding on Nadine's part?
> A. No.

Martinez Dep. ¶¶ 282-83.

[4] For example:

> Q, <u>Now, you've testified rather extensively about the curriculum concerns you had</u> about what was being done in the classrooms of the Cordovas, that it wasn't appropriate. Now, in regard to Floraida Tapia – we touched on this earlier, but you had received

**"Too often, attorneys place a premium on 'leaving no stone unturned' in litigation, resulting in needless depositions lasting an unnecessary amount of time."** *A Report on the Conduct of Depositions*, **131 F.R.D. 613, 616 (1990). Both surveys and anecdotal reports concerning civility in the bar confirm that busy attorneys dislike lengthy depositions and believe they increase the likelihood of rude and unprofessional conduct. Jean M. Cary,** *Rambo Depositions: Controlling an Ethical Cancer in Civil Litigation*, **25 Hofstra L. Rev. 561, 581 (1996). For these reasons, many courts are moving toward adopting local rules placing time limits on depositions.[5] "The time limit provides an incentive to ask the important**

---

> complaints from parents about what was going on in her classroom, didn't you, to the extent that people were claiming that they weren't being taught anything; that time was being wasted with coloring drawings? <u>Do you recall that testimony?</u>

Martinez Dep. ¶¶ 748-49 (emphasis added). While such questions may be appropriate on cross or redirect, it does not appear appropriate to again reopen a subject on the fourth day of direct.

[5] N.D. Okla. Rule 30.1.F (length limited to six hours); E.D. Tex. Rule Add. I, art. Six, 116 (length limited to six hours); D. Vt. Civ. 26.2(1) (one hour direct and one hour cross per party for nonparty witnesses; three hours direct and equal amount of time for cross per party for parties and experts); E.D. Wis. Rule 7.10 (depositions not to exceed six hours unless otherwise ordered). *See also* Ariz. R. Civ. P. 30(d) (four hours unless parties otherwise agree or more time is allocated by court order); Ill. Sup. Ct. Rules 206 and 222 (imposing time limits of three hours for many discovery depositions).

9

and necessary questions and leave the marginal and harassing ones unasked." *Rept. on the Conduct* at 616.

Federal Rule of Civil Procedure 30(d)(3) provides a refuge against abusive tactics by an examining attorney, such as repeatedly asking the same question, or asking argumentative questions or questions seeking information not relevant to the litigation. *Boyd v. University of Maryland Medical Sys.*, 173 F.R.D. 143, 145 (D. Md. 1997). Where the deposition inquiry is irrelevant, argumentative or repetitive, the proper course of action is to file a motion with the court and submit a sample of the disruptive behavior. *Oleson v. Kmart Corp.*, 175 F.R.D. 570, 573 (D. Kan. 1997). Defendants followed the proper course and Judge Puglisi's order limiting Plaintiff's deposition time is not clearly erroneous or contrary to law. Fed. R. Civ. P. 30(d); *Tower Press Bldg., Inc. v. White*, 165 F.R.D. 73 (N.D. Ohio 1996).

In support of his contention such conduct was acceptable, Plaintiff's counsel has filed affidavits by his co-counsel, Philip B. Davis, and Robert R. Rothstein. These affidavits center on two themes, employment cases require broader than normal discovery and in such actions plaintiffs require broad discovery to win. Mr. Davis opines:

> **I am acutely aware of the difficulty in adducing evidence of intentional discrimination and in particular, the importance of obtaining through painstaking discovery circumstantial evidence of such discrimination based on the extensive review of, and questioning of defendants with regard to, documents which [sic] rarely, if ever, enough time to adequately depose the major defendants in an employment discrimination case.**

Davis Aff. ¶ 3. It is Mr. Rothstein's opinion that Mr. Rosenstock is a dedicated advocate for his clients' interests whose "tenacity and effectiveness are essential personality traits for successfully litigating claims of this type." Rothstein Aff. ¶ 3.

While this Court has a great deal of respect for both Mr. Rothstein and Mr. Davis, it is respectfully suggested the perspective of these affidavits is too limited. Initially, case law does not support the claim that broader discovery is required in employment actions. *Blum v. Schlegel*, 150 F.R.D. 38 (W.D.N.Y. 1993); *Lee v. Hutson*, 600 F. Supp. 957 (N.D. Ga. 1984). Moreover, while zealous advocacy is necessary, winning is not the primary goal of litigation. This District has adopted "A Lawyers Creed of Professionalism of the State Bar of New Mexico" as a part of the local Court rules. *See* D.N.M.LR-Civ 83.9. Section C.6 of that Creed requires attorneys to vow to "refrain from engaging in excessive and abusive discovery." Section C.7 requires an attorney to "conduct himself with

dignity and refrain from displaying disrespect." *See also ABA Guidelines for Litigation Conduct* 20 ("We will not engage in any conduct during a deposition that would not be appropriate in the presence of a judge."). This Court is charged with balancing the scales of justice and must insist that these strictures temper the attorney's instinct to win at all costs.

## O R D E R

For the above stated reasons, Plaintiff's objections to the Magistrate's Order are DENIED except that it is ORDERED all future depositions in this case shall be taken in the United States District Courthouse in Albuquerque so that either party may immediately approach Judge Puglisi or this Court for rulings on discovery issues.

**Dated at Albuquerque this 4th day of November, 1998.**

_____
**BRUCE D. BLACK**
**United States District Judge**


**Counsel for Plaintiff:**
    **Richard Rosenstock, Santa Fe, NM**
    **Daniel Yohalem, Santa Fe, NM**
    **Andrew Vallejos, Albuquerque, NM**
    **Philip B. Davis, Albuquerque, NM (Of Counsel)**

**Counsel for Defendant:**
    **Jerry A. Walz, Walz & Associates, Albuquerque, NM**
    **Phil Krehbiel, Carol Lisa Smith, Lucinda R. Bovee, Krehbiel, Bannerman & Horn, Albuquerque, NM**